IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01384-MEH-KMT

JAMES E. BERWICK,
AFFILIATES IN ORAL AND MAXILLOFACIAL SURGERY, P.C.,

    Plaintiffs,

v.

HARTFORD FIRE INSURANCE COMPANY, INC.,

    Defendant.

**ORDER ON MOTION TO COMPEL**

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Plaintiffs' Motion to Compel [filed January 12, 2012; docket #31]. The motion is referred to this Court for disposition. (Docket #32.) The matter is fully briefed, and oral argument will not assist the Court in its adjudication. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion as follows.

**I.     BACKGROUND**

Plaintiffs, James E. Berwick ("Berwick") and Affiliates in Oral and Maxillofacial Surgery, P.C. ("Affiliates") are insured under a policy issued by the Defendant, The Hartford Fire Insurance Company ("Hartford"), Policy No. 65 SBA PT3146 DX ("the "Policy").

On or about May 8, 2008, a fire occurred at the business premises occupied by Berwick and Affiliates located at 3100 North Academy Boulevard, Colorado Springs, Colorado 80917 (the "Premises"). As a result of the fire, the Premises was rendered uninhabitable; however, after clean up and repair, Berwick and Affiliates were able to reoccupy the Premises on or about January 23, 2009.

The Policy, *inter alia*, includes coverage for loss of business income and extra expense. The limits of insurance for the business income and extra expense coverage is described as "12 months actual loss sustained." On June 30, 2010, Berwick and Affiliates filed a sworn proof of loss with the Defendant which included a loss of income in the amount of $461,912.00; this proof of loss was based on an analysis performed by Certified Public Accountant Roberta Jackson.

Plaintiffs allege that Defendant The Hartford has failed to pay the Plaintiffs' claim for loss of business income and, in so doing, the Defendant has breached its insurance contract. Plaintiffs also allege Defendant violated the Unfair Claims Settlement Practices subdivision of the Unfair Methods of Competition and Unfair Deceptive Acts or Practices section of the Colorado Insurance Code, C.R.S. § 10-3-1104. Finally, Plaintiffs contend the Defendant acted unreasonably in failing to pay Plaintiffs' claim for loss of business income.

Defendant denies Plaintiffs' allegations and contends it has paid over $70,000.00 in business income benefits to Plaintiffs. Defendant disputes the accounting or other methodologies on which Plaintiffs claim to have relied in asserting a claim for over $400,000.00 in benefits allegedly traceable to the subject fire loss.

In their motion, Plaintiffs seek an order compelling Defendant to provide a corporate representative for a deposition pursuant to Fed. R. Civ. P. 30(b)(6) to testify as to the following challenged topics:

#5 The Hartford's compliance or non-compliance with the Colorado and Fair Claims Settlement Practices subdivision, [Colo. Rev. Stat. §10-3-1104(1)(h)][1];

#6 Employment data - including the basis of compensation for Hartford employees

---

[1]The bracketed information was offered by the Plaintiffs during the parties' meet and confer concerning this matter. *See* Motion, ¶ 4.

>     James Duckworth, Mary Faucher and Phatsaly Phantrip; and
>
> #7  Other bad-faith claims which have been asserted [in the last five years] against The Hartford Fire Insurance Company and its parent corporation.

Plaintiffs argue that Defendant must have available a person in the home office who can testify both to the bad-faith claims asserted against the company and its efforts to comply with Colorado's Unfair Claims Settlement Practices statute. Plaintiffs state that a Colorado Supreme Court case stands for the proposition that a pattern of failing to pay claims could be evidence of bad faith and, thus, their request for such information concerning other bad faith claims is reasonable. Further, Plaintiffs argue that topic #5 does not seek legal conclusions but, rather, generalized information about how Defendant has implemented policies and procedures to comply with the statutory requirement. Plaintiffs also contend their request for the adjusters' employment information, including the basis on which they were compensated, is reasonable.

Defendant counters that topic #5 seeks legal conclusions, has no boundaries as to time or subject matter and provides no guidance regarding what aspects of its company history would need to be studied in preparation for the deposition. In addition, Defendant asserts the term, "employment data" in topic #6 is ambiguous and the topic provides no guidance as to what employment data must be studied in preparation for the deposition. Further, according to Defendant, Plaintiffs' counsel has referenced an unnamed supervisor during conferral on this matter. Finally, Defendant argues topic #7 is overly broad in that it would require the deponent to "answer questions under oath about every bad-faith claim asserted against Hartford [and its non-party parent corporation] anywhere, in any manner, for any reason, any time in the past five years." Response, docket #33 at 4. As such, Defendant contends the topic seeks information that is dissimilar and irrelevant to the instant action, and requires preparation that would be unduly oppressive and burdensome.

**II.     ANALYSIS**

Rule 30(b)(6) sets forth the procedure for deposing a corporation or other business organization such as Defendant, and provides in pertinent part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation ... and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.... The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). For Rule 30(b)(6) to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 528 (D. Kan. 2006). Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an "impossible task." *Steil v. Humana Kan. City, Inc.,* 197 F.R.D. 442, 444 (D. Kan. 2000) (citing *Reed v. Bennett,* 193 F.R.D. 689, 692 (D. Kan. 2000)). If the "noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Id.* (citing *Reed,* 193 F.R.D. at 692).

Here, Defendant's primary complaints are that topics #5-#7 listed in Plaintiffs' Rule 30(b)(6) notice are overly broad and irrelevant. The scope of evidence subject to discovery under the federal rules is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity

>and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The Court broadly construes relevance, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 552 (D. Colo. 2009). When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information is irrelevant by demonstrating the information does not come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. *Id.*; *see also Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004). "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003); *see also Bonnano*, 255 F.R.D. at 553.

With these standards in mind, the Court will proceed to address Defendant's challenges to Plaintiffs' proposed Rule 30(b)(6) deposition topics.

### A. Evidence of Other Bad Faith Claims

With respect to topic #7, the Court finds that the request, as submitted, is overbroad, irrelevant and will not likely lead to the discovery of admissible evidence in this case. Plaintiffs cite a Colorado Supreme Court case, *Dale v. Guarantee Nat'l Ins. Co.*, 948 P.2d 545 (Colo. 1997), for the proposition that "a pattern of failing to pay claims, including arbitration awards, could be evidence of a pattern of behavior, which pattern itself could be evidence of bad faith." Reply, ¶ 8,

docket #34 at 4. However, *Dale* does not stand for such proposition. Rather, the *Dale* court found that a finding of "willful and wanton" conduct pursuant to the No-Fault Act is not the equivalent of finding bad faith on the part of the insurer (*id.* at 551), that the tort of bad faith breach of insurance contract encompasses an entire course of conduct and is cumulative (*id.*), and that a jury should determine whether a nine-party check, a two-month delay in payment of benefits and the insurer's pre- and post-trial conduct prove the tort of insurance bad faith (*id.* at 554). The *Dale* court addressed no issue of a "pattern of failing to pay claims," or whether such "pattern" constitutes bad faith. Accordingly, the Court rejects Plaintiffs' argument.

Rather, the Court finds persuasive the decision in *Penford Corp., et al. v. National Union Fire Ins. Co. of Pittsburgh*, 265 F.R.D. 430, 434-35 (N.D. Iowa 2009). In that case, the court addressed an issue very similar to that presented here: whether a party may depose a corporate representative pursuant to Rule 30(b)(6) regarding other bad faith claims raised against the insurance company. *Id.* The plaintiff in *Penford* identified as a topic of inquiry "[a]ll bad faith claims asserted against [defendant] since 2005 relating to your alleged failure to properly or timely pay claims for time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees." *Id.* at 432. Penford later defined "claims" as "lawsuits." *Id.* The Court found that information regarding other bad faith lawsuits *may* have some relevance to the bad faith claim saying, "If Defendants engage in a pattern of deliberate, dilatory behavior in *delaying reimbursement to policyholders for legitimate losses*, then such evidence may support Penford's claim that Defendants knowingly delayed payment here." *Id.* at 434 (emphasis added); *see also Dudenhefer v. State Farm Fire & Casualty Co.*, No. 06-4380, 2007 WL 1521018, at *3 (E.D. La. May 23, 2007) (finding evidence of other bad faith claims *by residents of the same parish as a result of Hurricane Katrina* could be relevant to plaintiffs' bad

faith allegations). That is, the *Penford* court found the information sought by the plaintiff in that case relevant to the *specific* bad faith claim alleged in that case. This Court agrees.

Thus, the important distinction arising between *Penford* and the within matter is that the Plaintiffs here fail to limit their request to seek information relevant to the matter at hand; rather, Plaintiffs seek a broad scope of *all* bad faith "claims" brought against The Hartford in the last five years. *See Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) ("[p]ast claims by other insureds are not relevant to the present bad faith action before the court.") (citing *North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995) (finding information concerning prior bad faith claims, involving different facts and circumstances, "highly unlikely" to have any relevance to the subject bad faith claim)). Topic #7, as currently drafted, is overbroad and seeks information that is likely irrelevant to the Plaintiffs' bad faith allegations.

Here, Plaintiffs attempt to limit their request somewhat by defining the word "claims" set forth in topic #7 as "this action, Berwick et al. v. The Hartford Fire Insurance Company is a 'claim.'" Reply, ¶ 11, docket #34 at 4-5. However, Plaintiffs do not clarify that they desire to limit their request solely to "lawsuits." Other than this vague limitation and the five-year time period, Plaintiffs have not limited topic #7 to the matters alleged in this action.

Thus, the Court will deny Plaintiffs' request for an order compelling Defendant to produce a Rule 30(b)(6) deponent to testify as to topic #7. However, the Court will grant the motion in part by allowing the Plaintiffs to seek information from a Rule 30(b)(6) deponent concerning prior lawsuits against Defendant in the last five years alleging bad faith for failing to pay insureds for their loss of business income.[2]

---

[2]Defendant's argument concerning undue burden refers specifically to topic #7 as drafted. *See* Response, docket #33 at 7-8.

B.   Employment Data

Topic #6 seeks "employment data - including the basis of compensation for Hartford employees James Duckworth, Mary Faucher and Phatsaly Phantrip." Plaintiffs argue that they "ought to be afforded the opportunity to inquire about the employment status of the individuals who 'adjusted' Plaintiffs [sic] claim including the basis on which they were being compensated." Motion, docket #31 at 5. Plaintiffs contend that a protective order will assuage any privacy concerns the Defendant may have.

Defendant argues that the request is vague, ambiguous and seeks information that may not lead to the discovery of admissible evidence. The Court agrees to some extent. As drafted, topic #6 would allow Plaintiffs to inquire as to the employees' health and benefits information, and perhaps other employment data, all of which would be indisputably irrelevant to the bad faith allegations made here. Once again, the Court finds that Plaintiffs' suggested topic is overbroad as drafted, and will deny Plaintiff's request for an order compelling Defendant to provide a Rule 30(b)(6) deponent to testify as to topic #6.

However, the Court agrees with Plaintiffs that the adjustors' basis (or method) of compensation may be relevant to Plaintiffs' bad faith allegations here. Therefore, the Court will grant the motion to allow Plaintiffs to seek information pursuant to Rule 30(b)(6) concerning the named employees' basis or method of compensation (i.e., during the relevant time period, did the adjustor(s) receive a salary, any commissions, or any bonuses, and on what basis?). To the extent the Defendant feels such information is confidential, it may seek a protective order.[3]

C.   Compliance with Applicable Statute

---

[3] The Court notes that no protective order has been entered in this case. The parties are directed to review the protective order approved by Magistrate Judge Boland in *Gillard v. Boulder Valley Sch. Dist.*, 196 F.R.D. 382 (D. Colo. 2000).

In topic #5, Plaintiffs seek information concerning Defendant's "compliance or non-compliance with the Colorado and Fair Claims Settlement Practices subdivision." Plaintiffs later clarified that they seek information concerning Defendant's compliance with Colo. Rev. Stat. §10-3-1104(1)(h) (a subsection of the Colorado Unfair Claims-Deceptive Practices Act). Plaintiffs concede that topic #5 "is a generalized request for information about how the Defendant has implemented policies and procedures to comply with various statutory requirements" listed in subsection 1104(1)(h). Reply, ¶ 13, docket #34 at 6.

Plaintiffs' characterization of topic #5 gives the Court some pause as to how such "generalized information" might be relevant to the bad faith allegations made here. In addition, the Court agrees that topic #5, as drafted, might seek legal opinions or privileged information, particularly that which may reveal defense strategies or work product. Consequently, the Court will deny Plaintiffs' motion to compel Defendant to designate a Rule 30(b)(6) deponent to testify as to the currently drafted topic #5.

However, the Court also agrees that information related to Defendant's policies and procedures concerning its claims practice(s) in Colorado may be relevant to Plaintiffs' bad faith allegations. Therefore, the Court will grant the motion to allow the Plaintiffs to seek information pursuant to Rule 30(b)(6) as to Defendant's policies and procedures concerning its claims practice(s) in Colorado since the filing of the Plaintiffs' insurance claim that is the subject of this action.

### III.    CONCLUSION

The Court concludes that topics #5, #6 and #7, as drafted, are overbroad and may seek information that is privileged, irrelevant and not likely to lead to the discovery of admissible evidence. However, the Court will grant the Plaintiffs leave to seek information pursuant to Rule

30(b)(6) concerning each challenged topic as modified by this Court.[4]  Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Compel [filed January 12, 2012; docket #31] as set forth herein.

Dated at Denver, Colorado, this 21st day of February, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[4] Nothing in this Order precludes the Plaintiffs from seeking information pursuant to Fed. R. Civ. P. 30(b)(6) concerning those topics *not* challenged by the Defendant.