IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01384-MEH-KMT

JAMES E. BERWICK, and
AFFILIATES IN ORAL AND MAXILLOFACIAL SURGERY, P.C.,

    Plaintiffs,

v.

HARTFORD FIRE INSURANCE COMPANY, INC.,

    Defendant.

**ORDER ON DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF BRADLEY LEVIN UNDER FEDERAL RULE OF EVIDENCE 702**

**Michael E. Hegarty, United States Magistrate Judge.**

Defendant has moved to exclude the testimony of Plaintiffs' bad faith expert, Bradley Levin [filed July 6, 2012; docket #99]. The motion is fully briefed, and oral argument will not materially assist the Court in its adjudication of the motion. For the reasons that follow, I **deny** the motion.

## I. BACKGROUND

Plaintiffs James E. Berwick ("Berwick") and Affiliates in Oral and Maxillofacial Surgery, P.C. ("Affiliates") took out an insurance policy with Defendant The Hartford Fire Insurance Company ("Hartford"), Policy No. 65 SBA PT3146 DX ("the "Policy"). On or about May 8, 2008, Plaintiffs' business suffered a fire at 3100 North Academy Boulevard, Colorado Springs, Colorado 80917. As a result of the fire, the Premises was rendered uninhabitable; however, after clean up and repair, Berwick and Affiliates was able to reoccupy the Premises on or about January 23, 2009.

As relevant here, in connection with its bad faith claim, Plaintiffs offered attorney Brad Levin to opine that Defendant engaged in bad faith in certain respects in its claim handling and

payment conduct. Defendant moves under Fed. R. Evid. 702 to exclude Levin's testimony.

## II. DISCUSSION

A.      **Industry Standards and Use of Expert Testimony in First Party Bad Faith Cases**

A bad faith claim challenges the reasonableness of an insurer's conduct in investigating and adjusting a claim. The insurance company's conduct is judged objectively, using proof of industry standards. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985). It is appropriate and, indeed, often required to use an expert to establish insurance industry standards at trial. *Bankruptcy Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). Colorado courts have recognized that a bad faith claim is not limited to the insurance company's decision to grant or deny a claim but can also include an insurer's unreasonable refusal to investigate a claim and to gather facts relevant to the claim. *Savio*, 706 P.2d at 1274 n.20. "All aspects of payment, including the adjustment of a claim, that is, the '[determination] of the amount that an insurer will pay an insured to cover a loss,' *see Blacks Law Dictionary* 48 (9th ed.2009), fall within an insurer's good faith duty to its insured." *Dunn v. American Family Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010). Indeed, "for any actions pertaining to the investigation and handling of a claim, an insurer acting unreasonably, and with knowledge or reckless disregard, may be held liable in tort for the breach of the covenant of good faith and fair dealing." *Id.* The *Dunn* case dealt specifically with the insurer's duty to communicate with the insured regarding coverage after a claim is filed, holding that breach of such a duty can be the basis for a bad faith claim. *Id.*

B.      **Whether Mr. Levin's Testimony Must Be Excluded Based on Lack of Proper Evidentiary Foundation**

Defendant argues that both Mr. Levin and its own expert, John Grund, testified that a review of the complete insurance claim file, including the claim diary, is necessary for an expert to render

an adequately supported opinion on bad faith. Defendant's motion and reply contend that Mr. Levin only reviewed a partial claim file and, in particular, did not review the claim diary at all. The claim diary is purported to contain 50 pages of claim activity, including records of phone calls and other non-written communications between Defendant and Plaintiff Dr. Berwick and others. Plaintiffs contend that the documents Mr. Levin reviewed from the claim file are sufficient to support his opinion that Defendant engaged in bad faith.

There is no black letter authority for the proposition that if a bad faith expert does not examine the entire claim file, including a claim diary, his testimony is inadmissible under Rule 702. Thus, utilizing the parties' submissions, I must decide whether the material Mr. Levin did review satisfies his obligation under Rule 702(b), "the testimony is based on sufficient facts or data"; and 702(c), "the testimony is the product of reliable principles and methods." Under the circumstances, I would be required to decide an issue of fact for which I have an insufficient record.[1] Defendant does not proffer Mr. Levin's admission that he did not have sufficient material upon which to base his opinion; indeed, Mr. Levin, in rendering an opinion at all, necessarily asserts that he had access to sufficient facts or data to render that opinion.[2] Short of such an admission by Mr. Levin that he did not review sufficient materials to render an opinion, it would be exceedingly difficult to

---

[1]The Court could hold a Rule 702 hearing at which it compares the complete claim file as defined by Defendant with the documents reviewed by Mr. Levin, to determine whether his testimony is based on sufficient facts or data, but I do not believe that would advance the principles of Fed. R. Civ. P. 1. In the alternative, I will revisit this matter -- if requested and assuming a proper foundation is laid -- at the trial of this case.

[2]I acknowledge the potential perception that the Court's analysis results in *ipse dixit* reliance on Mr. Levin in asserting that he has reviewed sufficient material. Relevant in this consideration is his extensive experience in testifying as an expert in bad faith cases. I am making a reasoned assumption that Mr. Levin knows the generally accepted method of an expert's assessing the bad faith of an insurance company. As I stated in footnote 1, if this assumption proves wrong at trial, I will enter appropriate remedial orders at that point.

scrutinize Mr. Levin's file, compare it with the entire claims file, and make a legal determination whether Rule 702 has been satisfied. I understand that there is a quantitative aspect to the material that an expert must consider in rendering an opinion, but here we are talking about whether an insurance company properly handled a single claim, not whether some complex product such as an automobile or drug was defectively designed, tested or manufactured. I believe Defendant's objections go to weight and not to admissibility.

**C.      Whether Mr. Levin Can Testify that Defendant Behaved in an "Adversarial" Manner**

The *Dunn* case, cited above and in my order on the parties' motions for summary judgment, states that a bad faith claim deals with whether the insurer acted unreasonably in adjusting the claim. Defendant seeks to exclude any opinion by Mr. Levin that Defendant took an overly adversarial tone in its post-claim relationship with its insured. An insurance company is not merely required to avoid acting in bad faith toward its insured. Rather, "in a first-party action, the defendant insurance company owes the plaintiff-insured a duty of good faith." *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012). Should I determine as a matter of law that the legal duty of good faith does not include an element of non-adversarial communication? I think not. Is non-adversarial communication a concept so simple that expert testimony on the subject matter is inappropriate? If Mr. Levin testifies, based on his "knowledge, skill, experience, training, or education" (Fed. R. Evid. 702) that the industry standard for insurance companies includes a requirement that the insurer not take an overly adversarial stance toward its insured during the adjusting process, and that Defendant violated this standard, then again, any disagreement on the part of the Defendant should be borne out in cross-examination. I do not think that the issue is so basic that the jury must be permitted to consider the evidence without the use of experts. The field of insurance law is complicated, and it is not self-evident to me that the average jury will know how

4

an insurance company is supposed to act during a months-long, six-figure, commercial insurance adjusting process. Defendant does not provide any precedent on this precise issue, and I do not believe justice requires establishing a new doctrine of insurance law here.

**D.     Should Mr. Levin Be Permitted to Opine that Defendant Unnecessarily Delayed Payment?**

Defendant alleges that Plaintiffs demanded $461,912.00 in benefits in June 2010, and that Plaintiffs' expert, Mr. Levin, is opining that Defendant unreasonably delayed paying that amount. Defendant contends that because Plaintiffs did not provide the documentation underlying their purported business-interruption loss (patient referral data) until June 2012, during fact discovery in this lawsuit, Mr. Levin may not opine that any payment was untimely. Thus, Defendant argues that as a matter of law, Defendant's payment was not unreasonably delayed, since Defendant did not have the facts upon which to make a decision.

I do not read Mr. Levin's expert testimony the same as Defendant does. Mr. Levin stated: "The Hartford . . . unreasonably delayed in making proper payment on the claim following Berwick/Affiliates['] submission of a proof of loss in June 2010." If, indeed, Mr. Levin proposes to testify that Defendant's failure to promptly pay $461,912.00 was an element of its bad faith, I will not permit such testimony before the jury. As I recall, this figure was subsequently refuted by both Plaintiffs and Defendant. If, on the other hand, Mr. Levin has an opinion that Defendant unreasonably delayed in making some payment not tied directly to the $461,912.00 demand, I will leave the possibility open that he will be permitted to testify about this at trial. As a general matter, "unreasonable delay" in paying a claim is an issue of fact, absent uncontroverted facts. Here, Defendant does not provide a timeline of all events surrounding demands by Plaintiffs and payments by Defendant. I have not been given a sufficient record to issue a ruling of law on the timeliness

of the sum total of payments by Defendant in relation to the information that it had. Thus, although I agree with Defendant that the failure to pay $461,912.00 was not, as a matter of law, bad faith in any respect, I will not at this time exclude all opinions by Mr. Levin concerning timeliness. I simply do not have the information to do so.

### III.  CONCLUSION

For the reasons stated herein, Defendant's Motion to Exclude the Testimony of Bradley Levin under Federal Rule of Evidence 702 [filed July 6, 2012; docket #99] is **denied**.

Dated at Denver, Colorado, this 18th day of September, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge